**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| DAVID G. RAY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Lead Case No. 8:10-cv-00199 |
| Plaintiff, | |
| v. | **BRIEF IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS GILBERT G. LUNDSTROM AND EUGENE B. WITKOWICZ** |
| TIERONE CORPORATION, GILBERT G. LUNDSTROM, EUGENE B. WITKOWICZ, MICHAEL J. FALBO, JAMES A. LAPHEN, AND CHARLES W. HOSKINS, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |
| DOUGLAS L. STEJSKAL, | |
| Plaintiff, | Member Case No. 4:10-cv-3177 |
| v. | |
| GILBERT G. LUNDSTROM, | |
| Defendant. | |
| DOUGLAS L. STEJSKAL, | |
| Plaintiff, | Member Case No. 8:10-cv-332 |
| v. | |
| JAMES A. LAPHEN, | |
| Defendant. | |

## PRELIMINARY STATEMENT

The two claims asserted against Gilbert G. Lundstrom ("Lundstrom") and Eugene B. Witkowicz ("Witkowicz") in the Consolidated Amended Complaint ("Complaint") cannot survive dismissal.  Lundstrom was the CEO and Chairman of the Board of TierOne until his retirement from those positions in January 2010, and Witkowicz served as TierOne's Chief Financial Officer, Executive Vice President, Corporate Secretary, and Treasurer. (Doc. No. 46, ¶21, 23).  Though Lundstrom's and Witkowicz's titles make them instant targets of would-be securities claims, those claims must nevertheless pass muster under the Private Securities Litigation Reform Act of 1995 ("PSLRA") and be based on much more than just these defendants' titles within the company.  Because the claims in the Complaint are founded on nothing more than these defendants' job titles, the plaintiffs did not plead their primary Section 10(b) claims with the particularity required by the PSLRA nor did they plead facts that give rise to a "strong and cogent" inference that Lundstrom or Witkowicz acted with "the intention to deceive, manipulate or defraud."  *See* 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313 (2007).  Because of those failures, plaintiffs also failed to plead a secondary Section 20(a) claim.[1] Beyond the reasons demonstrated in the Omnibus Motion and supporting brief, there are two more reasons why plaintiffs failed to state claims against Lundstrom and Witkowicz.

*First*, plaintiffs did not plead any facts to support their bare assertions that these defendants "schemed" to defraud investors and to "conceal adverse material information about

---

[1] Lundstrom and Witkowicz have joined in the concurrently filed Omnibus Motion to Dismiss, supporting brief and evidence ("Omnibus Motion") and here address additional, independent grounds for dismissing the claims asserted against them.  For brevity, Lundstrom and Witkowicz incorporate the facts and arguments in the Memorandum in Support of the Omnibus Motion herein by reference, including those that pertain to dismissal of the Complaint in Member Case No. 8:10-cv-3177 involving the claim of Douglas Stejskal against Mr. Lundstrom.

the business." *See* (Doc. No. 46, ¶89-90).  Instead, as detailed below in Part I, plaintiffs make other allegations and rely on documents which show that before and during the Class Period, TierOne's primary regulator, the Office of Thrift Supervision ("OTS"), was closely monitoring TierOne, its Board of Directors and senior managers every step of the way throughout the proposed class period.  In light of these indisputable facts, there cannot and does not appear anywhere in the Complaint a specific allegation relative to any defendant, including Lundstrom and Witkowicz, that sheds any light on, much less pleads with particularity, the existence of any fraudulent "scheme."

*Second*, because plaintiffs did not plead a scheme, it necessarily follows that plaintiffs have not and could not plead facts giving rise to a "strong and cogent" inference of scienter to carry-out the non-existent scheme. As shown in Part II below, plaintiffs pled nothing more than a motive to make TierOne's stock look attractive: a motive commonly held by all corporate executives and that has been previously rejected by the Eighth Circuit as "insufficient to establish scienter." *See, e.g., In re K-tel Intern., Inc. Sec. Litig.*,  300 F.3d 881, 894 (8th Cir. 2002).   In fact, neither Lundstrom nor Witkowicz personally capitalized or gained when TierOne's stock was attractive.  Instead, they too held on to their shares of TierOne stock until they became worthless.  That fact disproves scienter.  *See In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1085 (8th Cir. 2005).

Plaintiffs were required to support their allegations of a "scheme to defraud" with particularized allegations that give rise to "strong and cogent" inference that Lundstrom and Witkowicz carried out this "scheme" with the "intent to defraud." *See In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 742-43 (8th Cir. 2002).  Despite two attempts in their pleadings, they did not and cannot discharge their pleading obligations, and their claims should therefore be dismissed with prejudice.

## LEGAL STANDARDS

When pleading a "scheme," as plaintiffs do here, they "must plead with particularity the who, what, when, where and how of this alleged scheme." *Navarre*, 299 F.3d at 745. To plead the requisite state of mind "[a] complaint must raise a strong inference of scienter for *each* defendant and with respect to *each* alleged misrepresentation." *Horizon Asset Mgmt. v. H & R Block, Inc.*, 580 F.3d 755, 761 (8th Cir. 2009) (affirming dismissal for lack of scienter) (emphasis added). Additionally, a complaint must raise a strong inference showing that any alleged misrepresentation was known to be false when made. *See Navarre*, 299 F.3d at 742-43.

Group pleading is inconsistent with these requirements, as is basing an inference of scienter on nothing more than the position a defendant held within an organization. *See In re Hutchinson Tech. Inc. Sec. Litig.*, 502 F.Supp.2d 884, 901 (D.Minn. 2007) ("The Reform Act's requirement that the complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind' cannot be reconciled with a presumption that would permit plaintiffs to impute a state of mind to a defendant based simply on his or her status in the company.") (citing *Kushner v. Beverly Enter., Inc.* 317 F.3d 820, 827 (8th Cir. 2003)). "To presume a corporate officer or director is connected with fraud based on status-title, duties, or service on a particular committee-is not reconcilable with the PSLRA's particularity mandate." *In re Patterson Cos., Inc. Sec., Derivative & ERISA Litig.*, 479 F. Supp. 2d 1014, 1028-29 (D. Minn. 2007) (finding the PSLRA abrogated the group pleading doctrine).

## ARGUMENT

### I.     THE COMPLAINT DOES NOT PLEAD A "SCHEME."

Plaintiffs claim that a group of defendants including Lundstrom and Witkowicz "carried out a plan, scheme and course of conduct" to "deceive the investing public" and "conceal adverse material information" about TierOne to "artificially inflate" the company's stock price.

4

(Doc. No. 46, ¶¶57, 89-90). But the "scheme" plaintiffs claim existed does not manifest itself in any allegation of the Complaint. Instead, the Complaint confirms that before and during the Class period, the OTS was scrutinizing the Bank's operations and its senior officers and directors. (Doc. No. 46, ¶19-20). Indeed, careful review of the Supervisory Agreement attached to the Complaint and TierOne's public disclosures demonstrates TierOne's management and Board of Directors worked to fulfill numerous stringent obligations set forth in the Supervisory Agreement between TierOne and the OTS, all under the watchful eye of the OTS. *See generally* (Doc. No. 46, ¶46 and Exhibit 1 at 2-14); Ex. 1 (1/15/09 Form 8-K); *see also, e.g.,* Ex. 2 at 20 (2008 10-K); Ex. 3 at 31 (8/5/09 10-Q); Ex. 4 at 29 (5/6/09 10-Q)).[2]

During the proposed class period, TierOne's reporting obligations to the OTS were substantial. Among other things, the OTS required the creation of a new Strategic Plan for TierOne, both "with and without" the Bank's participation in "any federal government program," which required OTS approval. (Doc. No. 46, Exhibit 1 at 3, ¶3(A)). Beyond that, the OTS also closely monitored TierOne's financial statements, loan loss forecasting and ALLL, loan portfolio, liquidity, Commercial Real Estate Stress Test Plan, loan policies, internal control planning, recognition of impaired and delinquent loans, asset classification process, Internal Asset Review Program, Underwriting and Documentation Plan. *See* (Doc. No. 46, Exhibit 1 at 3-9). Beyond these requirements, the OTS directed TierOne to enlist additional outside directors and consultants to evaluate TierOne's internal asset review, which included the examination of TierOne's ALLL and its adequacy, TierOne's internal controls, and its loan underwriting and documentation policies. (*Id.* at 7).

---

[2] When ruling on a motion to dismiss, courts "must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," which in a securities fraud case includes SEC filings. *Tellabs*, 551 U.S. at 322; *Horizon*, 580 F.3d at 761 (8th Cir. 2009) (taking judicial notice of corporation's SEC filings).

In particular, during the heart of the proposed class period, the OTS required TierOne's

Board of Directors to submit for approval a Corporate Governance Report that comprehensively

evaluated the senior executive officers (including Lundstrom and Witkowicz) and detailed a plan

for ensuring regulatory compliance.  *See* (*Id.* at 10, ¶13). The OTS required TierOne to submit

the Corporate Governance Report for OTS review and revision at its discretion.  (*Id.*).   Thus,

close inspection of plaintiffs' Complaint reveals a picture of rigorous regulatory oversight of the

day-to-day affairs and administration of TierOne, which substantially undermines plaintiffs' bare

allegation that a scheme to keep all of these matters secret from investors was going on

simultaneously.

The Eight Circuit requires plaintiffs to "plead with particularity the who, what, when,

where and how of this alleged scheme."  *Navarre*, 299 F.3d 735, 745 (8th Cir. 2002).  Merely

claiming, as plaintiffs do, that Lundstrom and Witkowicz "participated in the management of the

Company" or "were directly involved in drafting, producing, reviewing and/or disseminating"

the statements about which plaintiffs complain is insufficient.  *See* (Doc. No. 46, ¶¶28-29); *see*

*also Konkol v. Diebold, Inc*., 590 F.3d 390, 397 (6th Cir. 2009) ("[F]raudulent intent cannot be

inferred merely from the Individual Defendants' positions in the Company and alleged access to

information.").  *Accord In re Patterson Cos., Inc. Sec., Derivative & ERISA Litig*., 479 F. Supp.

2d 1014, 1028-29 (D. Minn. 2007).[3]

The fact that TierOne continually disclosed its efforts to fulfill its obligations under the

Supervisory Agreement runs directly counter to plaintiffs' unsupported claim that Lundstrom

---

[3] The Eighth Circuit also holds that blanket assertions of falsity in required Sarbanes-Oxley ("SOX") certifications are likewise insufficient to plead scienter.  *See Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*  580 F.3d 755, 765-66 (8th Cir. 2009) ("[If an allegation that a mandatory Sarbanes-Oxley certification was later proven to be inaccurate is sufficient to give rise to the requisite strong inference, scienter would be established in every case where there was an accounting error or auditing mistake by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.").  Plaintiffs' make the same kind of blanket assertions against Lundstrom and Witkowicz in this case that were rejected in *Horizon Asset Mgmt*.  *See* (Doc. No. 46 at ¶¶36-37, 40-41, 44-45, 48-49, 54-55).

and Witkowicz "in concert … participated in a continuous course of conduct to conceal adverse material information" about TierOne. *See* (Doc. No. 46, ¶90). Plaintiffs make no allegations of any kind to show *what* the "material adverse information" was that Lundstrom and/or Witkowicz possessed, *where* it came from, *who* knew it, *when* they knew it, or *how* Lundstrom and Witkowicz knew what they were reporting was false. Plaintiffs failure to plead facts to inform any of these inquiries shows there was no "scheme."

## II.      THE COMPLAINT FAILS TO PLEAD AN INTENT TO DECEIVE.

Lundstrom and Witkowicz each held large amounts of TierOne stock heading into the Class Period. *See* (Ex. 5 (Lundstrom 8/08/08 SEC Form 4); Ex. 6, (Witkowicz 4/23/08 SEC Form 4)). Their holdings were wiped out, which is wholly inconsistent with an intent to "deceive the investing public" and "artificially inflate" the price of their now worthless stock.

On more than one occasion, the Eighth Circuit has previously addressed – and dismissed– a securities fraud claim where plaintiffs alleged the same motive for the individual defendants that is alleged here. For instance, in *In re K-tel Intern., Inc. Sec. Litig.*, 300 F.3d 881 (8th Cir. 2002), the Eight Circuit concluded that the motive allegations of inflating the company stock price were "insufficient to support scienter" because "general allegations of a desire to increase stock prices, increase officer compensation or maintain continued employment are too generalized." *Id.* at 895. Reasoning that "such allegations may be sufficient if the benefit to an individual defendant is unusual," the court affirmed dismissal because "no such allegations were pled in this case." *Id*. ("The Class failed to allege how or to what extent the defendants' compensation or continued employment was tied to stock price or to what degree, if any, the defendants benefitted."). Similarly, in *Navarre*, the Eight Circuit affirmed dismissal where the plaintiffs alleged "nothing more than the fact that the defendants, being highly ranked executives and officers of Navarre, have self-serving motives for the company to appear profitable."

7

*Navarre*, 299 F.3d at 746.  The court concluded "this is not the intent of the 'motive and opportunity' standard, [] and is insufficient in establishing a strong inference of scienter under the PSLRA." *Id.*

Here, as in *K-tel* and *Navarre*, plaintiffs allege only that TierOne's senior management was motivated by a desire to increase TierOne's stock price and add value to the company.  The cases law makes clear that is insufficient to plead scienter.

Moreover, in this case, neither Lundstrom nor Witkowicz are alleged to have traded any stock during the proposed class period in an effort to capitalize on the alleged fraudulent scheme to inflate TierOne's stock price. The Eight Circuit has repeatedly explained that the absence of this type of allegation negates an inference of scienter. *See In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1085 (8th Cir. 2005) ("the fact that none of the other Individual Defendants are alleged to have traded any stock during the class period, 'decreases any inference of scienter.'"); *K-tel,* 300 F.3d at 896 (affirming dismissal because the inability to plead that defendants engaged in unusual trading activity "undercut[s] allegations of motive").  District courts in the Eighth Circuit are mindful of these decisions, and agree that "the fact that [individual defendant] did not sell any stock during the class period substantially undermines any inference of scienter." *In re Ceridian Corp. Sec. Litig.*, 504 F. Supp. 2d 603, 618 (D. Minn. 2007).

Lundstrom's and Witkowicz's lack of trading in face of the rapidly declining price of TierOne stock warrants the same conclusion in this case.  The absence of insider trading demonstrates the lack of scienter.  Lundstrom and Witkowicz are not required to be clairvoyant. *See In re K-Tel*, 300 F.3d at 891.  If they were, or if they had actually intended to defraud investors, then one would expect to find an allegation or some evidence that they actually profited or at least attempted to profit in some measure.

8

**III.    CONCLUSION**

For the foregoing reasons and those demonstrated in the Omnibus Motion to Dismiss and supporting brief, the claims against Lundstrom and Witkowicz should be dismissed with prejudice.

DATED this 2nd day of May 2011.          GILBERT G. LUNDSTROM, EUGENE B.
                                         WITKOWICZ, Defendants.


                                    By: s/David A. Yudelson
                                         Gregory C. Scaglione, #19368
                                         David A. Yudelson, #23257
                                         Patrice D. Ott, #24435
                                         KOLEY JESSEN P.C., L.L.O.
                                         One Pacific Place, Suite 800
                                         1125 South 103rd Street
                                         Omaha, NE  68124-1079
                                         (402) 390-9500
                                         (402) 390-9005 (facsimile)
                                         Greg.Scaglione@koleyjessen.com
                                         David.Yudelson@koleyjessen.com
                                         Patrice.Ott@koleyjessen.com
                                         *Attorneys for Gilbert G. Lundstrom and
                                         Eugene B. Witkowicz.*


                        **CERTIFICATE OF SERVICE**

       I hereby certify that on the 2nd day of May 2011, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which sent notification of such filing to all

CM/ECF participants and counsel of record.  The undersigned hereby certifies that a true and

correct copy of the above and foregoing was sent by U.S. mail, postage prepaid to:

Douglas L. Stejskal
P.O. Box 1222
Columbus, NE 68602


                                    s/David A. Yudelson
                                    David A. Yudelson

10