# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID G. RAY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> TIERONE CORPORATION, GILBERT G. LUNDSTROM, EUGENE B. WITKOWICZ, MICHAEL J. FALBO, JAMES A. LAPHEN, AND CHARLES W. HOSKINS, <br><br> Defendants. | Lead Case No. 8:10-cv-00199 <br><br><br> **DEFENDANT CHARLES W. HOSKINS' MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS AND REQUEST FOR ORAL ARGUMENT** |
| DOUGLAS L. STEJSKAL, <br><br> Plaintiff, <br><br> v. <br><br> GILBERT G. LUNDSTROM, <br><br> Defendant. | Member Case No. 4:10-cv-3177 |
| DOUGLAS L. STEJSKAL, <br><br> Plaintiff, <br><br> v. <br><br> JAMES A. LAPHEN, <br><br> Defendant. | Member Case No. 8:10-cv-332 |

# TABLE OF CONTENTS

**Page(s)**

Introduction ........................................................................................................................ 1

Argument ........................................................................................................................... 2

  I.    THE COMPLAINT FAILS TO ALLEGE THAT MR. HOSKINS MADE AN ACTIONABLE MISSTATEMENT ................................................................... 2

  II.   THE COMPLAINT FAILS TO PLEAD A "STRONG INFERENCE OF SCIENTER" AS TO MR. HOSKINS ................................................................. 4

        A.    The Complaint Fails To Allege Specific Facts Showing That Mr. Hoskins Acted With Fraudulent Intent ................................................................. 5

        B.    The Facts Alleged Negate Any Suggestion Mr. Hoskins Acted With Scienter ................................................................................................. 7

  III.  PLAINTIFFS' OWN ALLEGATIONS SHOW MR. HOSKINS DID NOT CAUSE PLAINTIFFS' CLAIMED DAMAGES ............................................... 11

Conclusion ....................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)......................................................................................................11, 12

*Horizon Asset Mgmt. Inc. v. H&R Block, Inc.*,
    580 F.3d 755 (8th Cir. 2009) ......................................................................................5, 6, 7, 8

*In re Ceridian Corp. Sec. Litig.*,
    504 F. Supp. 2d 603 (D. Minn. 2007), *aff'd* 542 F.3d 240 (8th Cir. 2008) .............................10

*In re Cerner Corp. Sec. Litig.*,
    425 F.3d 1079 (8th Cir. 2005) ................................................................................................10

*In re K-Tel Int'l, Inc. Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) ..............................................................................................5, 10

*In re Patterson Cos., Inc. Sec., Deriv., & ERISA Litig.*,
    479 F. Supp. 2d 1014 (D. Minn. 2007)................................................................................2, 3, 4

*Juntti v. Prudential-Bache Sec., Inc.*,
    1993 WL 138523 (4th Cir. May 3, 1993) ...........................................................................2, 4

*Kushner v. Beverly Enter., Inc.*,
    317 F.3d 820 (8th Cir. 2003) ...............................................................................................5, 6, 7, 9

*McAdams v. McCord*,
    584 F.3d 1111 (8th Cir. 2009) ..........................................................................................11, 12

*Schaaf v. Residential Funding Corp.*,
    517 F.3d 544 (8th Cir. 2008) .............................................................................................11, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).............................................................................................................5, 7, 8

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)................................................................................................2, 3, 4

**STATUTES**

15 U.S.C. § 78u-4 ........................................................................................................................2

### Introduction

This Court should dismiss all claims against Charles Hoskins because plaintiffs do not and cannot allege specific facts showing that Mr. Hoskins made an actionable misstatement, much less that he intended to defraud investors or caused plaintiffs' claimed losses. Mr. Hoskins was an *outside* director of defendant TierOne Corporation — the only outside director to be named as a defendant in this litigation. (Dkt. No. 46 at ¶ 25.) As an outside director, Mr. Hoskins was not involved in the day-to-day operations of TierOne. That is why the complaint barely mentions Mr. Hoskins. Plaintiffs associate him with only one purported misstatement: TierOne's 2008 Form 10-K, which Mr. Hoskins signed along with a number of other individuals. (*Id.* ¶ 43.) Plaintiffs allege that, in hindsight, the Form 10-K contained inaccurate statements about TierOne's internal controls and loan-loss predictions. (*Id.* ¶¶ 43, 46.) Significantly, before Mr. Hoskins signed the Form 10-K, it was approved by management and TierOne's independent auditor, KPMG.

Besides the allegation that he signed the 2008 Form 10-K, Mr. Hoskins is essentially absent from the plaintiffs' 55-page complaint. There is no allegation that he was involved in any of the other alleged misrepresentations, that he benefitted in any way from the alleged fraud, that he had a motive to engage in a fraudulent scheme, or that he knew the alleged misrepresentations were inaccurate when made. Plaintiffs merely allege that Mr. Hoskins served on TierOne's board of directors and signed a single Form 10-K.

As shown below, plaintiffs' allegations are not sufficient to assert a securities fraud claim against Mr. Hoskins. All claims against him should be dismissed because the complaint fails to identify an actionable misstatement made by him. *See* Part I below. Nor do plaintiffs allege specific facts establishing the requisite "strong inference" that Mr. Hoskins, as an outside

director, acted with scienter. *See* Part II below.  Finally, plaintiffs' own allegations demonstrate that Mr. Hoskins' conduct could not have caused plaintiffs' claimed losses. *See* Part III below.[1]

## Argument

### I. THE COMPLAINT FAILS TO ALLEGE THAT MR. HOSKINS MADE AN ACTIONABLE MISSTATEMENT.

Plaintiffs cannot assert a securities fraud claim against Mr. Hoskins because there are no specific allegations showing that he made an actionable misstatement. The Private Securities Litigation Reform Act ("PSLRA") requires plaintiffs asserting a securities fraud claim to "specify each statement alleged to have been misleading" by "the defendant." 15 U.S.C. § 78u-4(b). Thus, under the PSLRA, the Court must "ascertain whether plaintiffs have sufficiently pleaded a claim for securities fraud against *each* defendant." *In re Patterson Cos., Inc. Sec., Deriv., & ERISA Litig.*, 479 F. Supp. 2d 1014, 1028 (D. Minn. 2007) (emphasis added).

As courts repeatedly have held, the PSLRA prohibits "group pleading" of securities fraud claims. It is not sufficient for plaintiffs to allege that misstatements were made by unspecified "defendants" or that an individual defendant is responsible for a misstatement in a corporate filing merely because of the defendant's title or role in the corporation. *Winer Family Trust v. Queen*, 503 F.3d 319, 336-37 (3d Cir. 2007) ("The only courts of appeals to have directly addressed the survival of the group pleading doctrine post-PSLRA have abolished the doctrine"; collecting cases); *see also Juntti v. Prudential-Bache Sec., Inc.*, 1993 WL 138523, at *2 (4th Cir. May 3, 1993) (affirming dismissal of securities fraud complaint in light of the complaint's "impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act"). Nor can plaintiffs presume in a complaint "that statements in group-

---

[1] Mr. Hoskins joins in the separately filed motion to dismiss and supporting memorandum that all individual defendants have filed jointly in this matter (the "Omnibus Motion"). The Omnibus Motion explains why all claims against each of the defendants, including Mr. Hoskins, should be dismissed. Mr. Hoskins files this separate motion to establish additional, independent grounds for dismissal as to him.

published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Winer*, 503 F.3d at 335.[2] "To presume a corporate officer or director is connected with fraud based on status — title, duties, or service on a particular committee — is not reconcilable with the PSLRA's particularity mandate." *Patterson*, 479 F. Supp. 2d at 1028 (D. Minn. 2007).

Instead, the PSLRA "requires plaintiffs to specify . . . each defendant's involvement in misstatements and omissions." *Winer*, 503 F.3d at 335-36 (affirming dismissal of claims against defendants that were based on group pleading). The facts of the alleged fraud "must be particularly stated" and must include "the identity of the person who made the statement." *Patterson*, 479 F. Supp. 2d at 1027. For example, in *Patterson*, the plaintiffs alleged that a corporation and its directors and officers misrepresented the corporation's financial condition in a series of SEC filings and public statements. *Id*. at 1022-25. Rejecting the group pleading doctrine, the court held that, "consistent with precedent of the Eighth Circuit Court of Appeals," securities fraud plaintiffs must plead specific facts attributing alleged misrepresentations to a particular individual defendant. *Id*. at 1028 (citing *Kushner v. Beverly Enter., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003)). The court dismissed the complaint because the misrepresentations alleged in it were "unattributed" quotations, a prediction "made by an unidentified individual," and an "unidentified growth forecast by 'defendants.'" *Id*. at 1029. The court explained: "critically missing is the identity of the speaker, the source of the quotation and the context in which the statement was made." *Id*.

Here, plaintiffs allege that they were misled by four Forms 10-Q, two press releases, and one Form 10-K issued during the proposed class period. (Dkt. No. 46 ¶¶ 35, 39, 43, 47, 51, 74.) With regard to the Forms 10-Q and press releases, plaintiffs do not attribute any alleged

---

[2] Here, plaintiffs do not even allege specific facts showing Mr. Hoskins had day-to-day control or involvement with TierOne.

3

misstatements to Mr. Hoskins.  There is no allegation that he signed those documents, drafted them, or was quoted in them.  (*See id.* ¶¶ 35, 39, 47, 51, 74.)  It is not sufficient to allege that Mr. Hoskins is liable for any alleged misstatements in those corporate documents simply because he was a member of TierOne's board of directors or served on certain TierOne committees.  *See, e.g., Winer*, 503 F.3d at 335 (3d Cir. 2007); *Juntti*, 1993 WL 138523, at *2 (4th Cir. 1993); *Patterson*, 479 F. Supp. 2d at 1028 (D. Minn. 2007).  Therefore, to the extent that plaintiffs' claims against Mr. Hoskins are based on misstatements contained in the Forms 10-Q or the press releases, they must be dismissed.

The only supposedly misleading document that the complaint ties to Mr. Hoskins is TierOne's Form 10-K for the year ended December 31, 2008, which Mr. Hoskins (and several other individuals) signed.  (Dkt. No. 46 ¶ 43.)  Plaintiffs allege that the Form 10-K contained two misrepresentations.  First, plaintiffs allege that two statements in the filing — that "management believes" and that TierOne's CEO and CFO "have concluded" that internal controls would be effective — were false.  (*Id.*)  Second, plaintiffs allege that the Form 10-K supposedly underestimated TierOne's loan loss reserves, in violation of GAAP.  (*Id.* at ¶ 46.)  However, as demonstrated in the Omnibus Motion, both of those alleged misstatements are non-actionable because they are protected forward-looking statements accompanied by cautionary language, and because plaintiffs fail to allege specific facts showing that the statements were false when made.  *See* Omnibus Motion Mem., Part I.  Therefore, because the only statements plaintiffs attempt to associate with Mr. Hoskins cannot support a securities fraud claim, the case should be dismissed as to him.

**II.    THE COMPLAINT FAILS TO PLEAD A "STRONG INFERENCE OF SCIENTER" AS TO MR. HOSKINS.**

The claims against Mr. Hoskins should be dismissed for the independent reason that plaintiffs do not, and cannot, allege specific facts establishing the requisite "strong inference"

4

that Mr. Hoskins — as an outside director not involved with TierOne's daily operations — acted with scienter.

### A. The Complaint Fails To Allege Specific Facts Showing That Mr. Hoskins Acted With Fraudulent Intent.

The claims against Mr. Hoskins fail because the complaint does not allege facts showing that Mr. Hoskins intended to mislead investors or believed at the time he signed the 2008 Form 10-K that the statements in it regarding internal controls and loan-loss predictions were false. Under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The required state of mind is "scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). As the Eighth Circuit has made clear, a complaint must allege facts raising a strong inference of scienter "for each defendant and with respect to each alleged misrepresentation." *Horizon Asset Mgmt. Inc. v. H&R Block, Inc.*, 580 F.3d 755, 761 (8th Cir. 2009) (affirming dismissal for lack of adequate scienter allegations); *see also In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 895-96 (8th Cir. 2002) ("taking each defendant individually," allegations were insufficient to plead scienter).

The Eighth Circuit repeatedly has affirmed dismissals of securities fraud cases that failed to allege specific facts showing that the individual defendant knew of the alleged fraudulent scheme or knew that a particular statement was incorrect at the time it was made. For example, in *Kushner*, the plaintiffs charged that directors who signed a corporation's SEC filings violated GAAP by failing to maintain sufficient reserves and by falsifying staff time-sheets. *Kushner*, 317 F.3d at 826 (8th Cir. 2003). The Court held that the plaintiffs had failed to allege scienter against the individual defendants. *Id.* at 827. The Court observed that the complaint alleged that the company inflated earnings, but "makes no particular assertion of which defendant was responsible for which statement or omission, or how any defendant participated in the alleged

5

scheme." *Id*. The Eighth Circuit stressed: "Without allegations of particular facts demonstrating how the defendants knew of the scheme at the time they made their statements of compliance, that they knew the financial statements overrepresented the company's true earnings, or that they were aware of a GAAP violation and disregarded it, a showing in hindsight that the statements were false does not demonstrate fraudulent intent." *Id*. The Eighth Circuit concluded that blanket allegations that "the defendants designed and implemented the policies of improper allocation" and "had actual knowledge of the misrepresentation" were not sufficient to establish scienter as to the individual defendants. *Id*.

Similarly, in *Horizon*, the plaintiffs sued H&R Block and its directors and officers after the corporation announced that it would restate its financial results for a three-year period. *Horizon*, 580 F.3d at 759 (8th Cir. 2009). Emphasizing that the Court was required to examine the allegations against each defendant "separately," the Eighth Circuit held that the complaint failed to plead scienter against each of the individual defendants. *Id*. at 761, 767. The Court observed that the allegation that a person who was involved in the fraudulent scheme reported to an individual defendant could not sustain an inference that the individual defendant knew of, or participated in, the fraud. *Id*. at 762. The Court further held that the complaint's reliance on a witness — a vice-president in internal audit who asserted that the individual defendant knew the company had internal control problems — likewise was not sufficient to plead scienter against the individual defendant. The Court explained that the plaintiff "has not alleged how [the witness] discovered that [the individual defendant] was aware of the control failures or how [the witness] would have a basis to know what [the individual defendant] knew." *Id*. at 763. The Court concluded that "even if we were to assume that the allegation were true and that [the individual defendant] knew about the accounting problems," the complaint failed to allege

6

scienter because it "does not allege that [the individual defendant] knew that the financial results . . . were false or that he intended to deceive the public." *Id.*

As in *Kushner* and *Horizon*, plaintiffs here do not and cannot allege specific facts showing that Mr. Hoskins — and not some undifferentiated group of "defendants" — knew when he signed the 2008 Form 10-K that the statements in it regarding internal controls and loan-loss predictions purportedly were inaccurate. The complaint alleges (in hindsight) that those statements were not accurate, but the complaint does not allege specific facts showing that Mr. Hoskins — an outside director not involved in day-to-day operations — had such knowledge at the time the statements were made or that he otherwise intended to mislead investors. (Dkt. No. 46 ¶¶ 43-46.) Indeed, the portion of the complaint labeled as the "Scienter" section does not even mention Mr. Hoskins, much less allege specific facts about his knowledge or intent. (*Id.* at ¶¶ 72-76.) Nor is there any allegation that either of the plaintiffs' supposed "witnesses" ever spoke to Mr. Hoskins or had a basis to know anything about Mr. Hoskins' state of mind. (*Id.* at ¶¶ 32-34.) Rather, the complaint is entirely silent about Mr. Hoskins' knowledge, state of mind, or intent.

Plaintiffs therefore have not pleaded the requisite "strong inference" that Mr. Hoskins acted with scienter.

B.  **The Facts Alleged Negate Any Suggestion Mr. Hoskins Acted With Scienter.**

In all events, plaintiffs' own allegations demonstrate that Mr. Hoskins' lack of scienter is a much stronger inference than that he acted with fraudulent intent. As the Supreme Court has explained, to determine whether a plaintiff has alleged facts sufficient to establish the requisite "strong inference" of scienter, a court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs,* 551 U.S. at 314 (2007). An inference of scienter "must

7

be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. A court "must consider plausible nonculpable explanations for the defendant's conduct," and the complaint's inference of scienter must be "strong in light of other explanations." *Id*. at 324. "In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id*. at 326. Here, far from supporting plaintiffs' position, the allegations and undisputed facts show the opposite — that Mr. Hoskins did not act with fraudulent intent.

*First*, the complaint's allegation that Mr. Hoskins consulted with and relied upon TierOne's outside auditor, KPMG, demonstrates that he did not intend to mislead investors. The Eighth Circuit has held that consultation with independent auditors is "a prudent course of action that weakens rather than strengthens an inference of scienter." *Horizon*, 580 F.3d at 763 (8th Cir. 2009). As the complaint shows, Mr. Hoskins was an outside director who relied upon TierOne's independent auditor, KPMG. (Dkt. No. 46 at ¶¶ 25, 27.) Plaintiffs allege:

> *Hoskins, reviewed and discussed: . . . TierOne's financial statements with its independent auditor, KPMG, including* matters required under Generally Accepted Auditing Standard, AU Section 380, *i.e*., the scope and results of the audit that may assist the audit committee in overseeing the financial reporting process for which management is responsible; *internal controls; significant accounting policies/changes; accounting estimates and management judgments;* audit adjustments and misstatements; and difficulties encountered in performing the audit.

(*Id*. at ¶ 27, emphasis added.) By alleging that Mr. Hoskins consulted with KPMG regarding TierOne's financial statements and that he discussed internal controls and other accounting issues with KPMG, plaintiffs' own allegations strengthen the inference that Mr. Hoskins did not act with fraudulent intent when he signed the 2008 Form 10-K. *Horizon*, 580 F.3d at 763.

*Second*, the results of KPMG's audits further demonstrate that Mr. Hoskins did not act with fraudulent intent. Allegations of scienter are weakened if a company's outside auditor did

8

not question the company's accounting during the time the alleged misrepresentations were made. *Kushner*, 317 F.3d at 829 (8th Cir. 2003) ("It is telling to us that [the corporation's] outside auditors did not question its accounting practices"). Plaintiffs allege that the 2008 Form 10-K that Mr. Hoskins signed contained misstatements about the effectiveness of TierOne's internal controls and the adequacy of its estimates of future loan losses. (Dkt. No. 46 at ¶¶ 43, 46.) Significantly, in that Form 10-K and in each of TierOne's previous Forms 10-K for the prior four years, KPMG declared that "TierOne Corporation maintained, in all material respects, effective internal control over financial reporting." (Ex. 1 at 130 (2008 10-K); *see also* Ex. 2 at 123 (2007 10-K); Ex. 3 at 113 (2006 10-K); Ex. 4 at 99 (2005 10-K); Ex. 5 at 83-84 (2004 10-K).) In each of those Forms 10-K, KPMG also gave an unqualified opinion on the soundness of management's "estimates" and "the consolidated statements of financial condition." (Ex. 1 at 80 (2008 10-K); Ex. 2 at 78 (2007 10-K); Ex. 3 at 72 (2006 10-K); Ex. 4 at 62 (2005 10-K); Ex. 5 at 82 (2004 10-K); *see also* Ex. 6 at Ex. 13, p. 48 (2003 10-K); Ex. 7 at Ex. 13, p. 50 (2002 10-K).) Plaintiffs do not allege any facts, much less specific ones, showing that Mr. Hoskins, as an outside director, knew more than KPMG knew about TierOne's accounting and internal controls or believed that KPMG's public representations and assurances were wrong. Therefore, the fact that KPMG attested to the effectiveness of internal controls and the soundness of TierOne's accounting estimates in the very Form 10-K that plaintiffs claim was fraudulent (and had done so for the previous Forms 10-K before that), confirms that Mr. Hoskins did not intend to mislead investors and did not know that its statements regarding internal controls or loan-loss predictions were purportedly incorrect.

*Third*, plaintiffs do not allege that Mr. Hoskins traded any shares of TierOne stock during the proposed class period or had any other economic incentive to engage in fraud. As the Eighth Circuit has held, the lack of insider trading or direct financial benefit supports the inference that

9

a defendant did not act with fraudulent intent. *K-tel,* 300 F.3d at 894, 896 (8th Cir. 2002) (affirming dismissal because the inability to plead that defendants engaged in unusual trading activity "undercut[s] allegations of motive," and "the Class failed to allege facts to show the trading activity was unusual or how it was unusual"); *accord In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1085 (8th Cir. 2005) ("[T]he fact that none of the other Individual Defendants are alleged to have traded any stock during the class period, decreases any inference of scienter") (internal quotations omitted); *In re Ceridian Corp. Sec. Litig.,* 504 F. Supp. 2d 603, 618 (D. Minn. 2007) ("[T]he fact that [individual defendant] did not sell *any* stock during the class period substantially undermines any inference of scienter"), *aff'd* 542 F.3d 240, 247 (8th Cir. 2008).

Here, there is no allegation (nor could there be) that Mr. Hoskins traded TierOne shares or had an economic incentive to engage in fraud. As TierOne's SEC filings show, Mr. Hoskins did not benefit from the events at TierOne. He owned nearly 58,000 shares of TierOne, all of which became worthless, just like the shares of plaintiffs. (Ex. 8 at 29 (2009 Form 14A).) The lack of any allegation of economic benefit further demonstrates that he lacked scienter.

*Fourth*, the undisputed fact that the federal Office of Thrift Supervision ("OTS") was deeply involved in TierOne's operations and closely monitoring TierOne at the time Mr. Hoskins signed the 2008 Form 10-K likewise strengthens the inference that Mr. Hoskins did not act with scienter. The Form 10-K that Mr. Hoskins signed was filed on March 13, 2009. (Ex. 1 (2008 10-K).) As alleged in the complaint, TierOne announced two months *before* that date that it had entered into a Supervisory Agreement with the OTS. (Dkt. No. 46 at ¶ 58.) That announcement made clear that, after conducting its regulatory examination, the OTS was imposing significant restrictions and further monitoring requirements on TierOne because of the bank's precarious financial condition. (*Id*. ¶¶ 37, 58; Ex. 9 (1/15/09 Form 8-K).) It is implausible to infer that, given the OTS's heightened scrutiny and TierOne's public announcement that it was subject to

10

enhanced OTS restrictions and monitoring requirements, Mr. Hoskins decided to engage in securities fraud.

*Fifth*, according to plaintiffs' own "witness," Bernal Quesada, TierOne's board of directors was "extremely passive" and "very unwilling to undertake anything difficult." (Dkt. No. 46 ¶ 32(c).) Those allegations, if they were true (which they are not), undercut plaintiffs' ability to infer scienter as to Mr. Hoskins. Put simply, outside directors who supposedly are "passive" do not engage in acts of intentional fraud.

In sum, because plaintiffs have not adequately alleged scienter regarding Mr. Hoskins, the complaint should be dismissed as to him.

## III. PLAINTIFFS' OWN ALLEGATIONS SHOW MR. HOSKINS DID NOT CAUSE PLAINTIFFS' CLAIMED DAMAGES.

A third independent, fatal flaw in the complaint is plaintiffs' inability to allege that Mr. Hoskins caused plaintiffs' claimed damages. To assert a securities fraud claim, plaintiffs must allege "loss causation." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). As the Eighth Circuit has held, "threadbare, conclusory statement[s]" are not sufficient to allege loss causation. *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009). Rather, to plead loss causation, "the complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses." *Id*. In *McAdams*, the Eighth Circuit affirmed dismissal of a securities fraud case precisely because the plaintiffs failed to allege loss causation adequately. *Id.* at 1114-15. The court stressed that the complaint "does not specify how two statements by [the movant], as compared to the complaint's long list of alleged misrepresentations and omissions by [others], proximately caused the investors' losses." *Id*. In addition, plaintiffs' own allegations prevented them from alleging loss causation because the corporation's financial troubles "were public knowledge before the announcement of the need for a restatement." *Id*. at 1115; *accord Schaaf v. Residential Funding Corp*., 517 F.3d 544, 550 (8th Cir. 2008) (affirming dismissal: "In a

11

securities case, this standard requires the plaintiff to show that the defendant's fraud — and not other events — caused the security's drop in price").

Here, plaintiffs associate Mr. Hoskins with only one purported misstatement — TierOne's 2008 Form 10-K. As in *McAdams*, the complaint does not specify how that filing caused plaintiffs' claimed losses, as compared to other misrepresentations that plaintiffs allege were made before and after the 2008 Form 10-K. *McAdams*, 584 F.3d at 1114-15. Moreover, plaintiffs' own allegations show that the Form 10-K could not have caused their claimed losses. The Form 10-K was filed on March 12, 2009. (Dkt. No. 46 at ¶ 43; Ex. 1 (2008 10-K).) However, similar to *McAdams*, plaintiffs allege that the "truth" about TierOne's financial condition was "revealed" *before* the Form 10-K was issued. (Dkt. No. 46 at ¶¶ 57-58.) In particular, plaintiffs contend that TierOne's fraud was "revealed" (thus triggering plaintiffs' claimed losses) on January 15, 2009 — two months before TierOne filed the 2008 10-K — when TierOne announced that it had entered into the Supervisory Agreement with the OTS. (*Id*. ¶ 58.) Plaintiffs allege that the Supervisory Agreement and TierOne's announcement of it "reveal[ed] a number of material internal control weaknesses" and "[t]his adverse information caused the Company's stock price to fall . . . to $2.10 per share, a 37.8% decline." (*Id*.)

The point is, if the truth about TierOne's financial condition was "revealed" on January 15 and "caused the Company's stock price to fall" nearly 40%, then plaintiffs logically cannot claim that statements made in March "caused" their claimed damages. *Dura*, 544 U.S. at 342 (2005); *McAdams*, 584 F.3d at 1115 (8th Cir. 2009) (affirming dismissal where facts of company's financial condition already were publicly known); *Schaaf*, 517 F.3d at 550-53 (8th Cir. 2008) (affirming dismissal where complaint showed other events caused stock price drop). Plaintiffs therefore cannot allege that conduct by Mr. Hoskins caused their claimed losses.

## Conclusion

For the foregoing reasons, and the reasons shown in the Omnibus Motion, all claims against Mr. Hoskins should be dismissed with prejudice.

Dated: May 2, 2011

Respectfully submitted,

CHARLES W. HOSKINS

BY: <u>s/ J. Kevin McCall</u>

    J. Kevin McCall (IL Bar #3125685)
    James L. Thompson (IL Bar #6199621)
    JENNER & BLOCK LLC
    353 North Clark Street
    Chicago, IL  60654
    Telephone:  (312) 222-9350
    Fax:  (312) 527-0484
    JMcCall@Jenner.com

*Attorneys for Defendant Charles Hoskins*

**CERTIFICATE OF SERVICE**

On the 2nd day of May 2011, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all CM/ECF participants and counsel of record. The foregoing also was mailed via First Class Mail on this day to Douglas L. Stejskal, PO Box 1222, Columbus, NE 68602 (*Pro Se Plaintiff*).

By:   s/ J. Kevin McCall
       J. Kevin McCall